

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*

*One Saint Andrew's Plaza*
*New York, New York 10007*

September 18, 2008

**By ECF and Facsimile**
The Honorable Jed S. Rakoff
United States District Court
Southern District of New York
500 Pearl Street, Room 1950
New York, New York 10007

      Re:    **United States v. Damian Brown, et al.,**
                  **S2 05 Cr. 538 (JSR)**

Dear Judge Rakoff:

      The Government submits this letter in advance of sentencing in the above-captioned case to respond briefly to the defendants' sentencing submissions received on September 15 and 16, 2008. Sentencing in this matter is scheduled for September 22, 2008. For the reasons set forth herein and in the defendants' Presentence Reports (the "PSRs"), as well as on the basis of the evidence presented at trial and reflected in the jury's verdict convicting all four defendants of murder, conspiracy to distribute marijuana, and firearms charges, the Government submits that the Court should sentence each of the defendants to life imprisonment, as calculated and recommended by the Probation Department.

      The Government will not reiterate here the nature or details of the crimes for which the defendants have been convicted, as this Court presided over the trial and is well aware of the conduct now before the Court at sentencing. The Government concurs with the Probation Department's rendering of the defendants' offense conduct and criminal history, as well as the sentencing recommendations and accompanying justifications included in the PSRs. However, we write to clarify certain facts and address specific arguments made by the defendants in their sentencing submissions.

      With regard to the murder of Keino Simpson, there is no doubt that all four defendants' conduct was intentionally violent, brutal, premeditated, and that each defendant played an active role in the murder. The evidence at trial made clear that, on the night Simpson was killed, all four defendants armed themselves to the teeth – with four handguns and an AK-47 assault rifle – and went looking for Simpson and his associate, Omar Ken. When the defendants found Simpson, Ken, and David Reeves, all four defendants opened fire on them, and continued shooting at them for more than a mile through the streets of the Bronx. A number of the defendants argue in their sentencing submissions that the previous violence between the defendants and Simpson and Ken should mitigate their sentences here. Although Simpson and

Ken had both engaged in a violent robbery of Peterkin and in other violence towards the defendants in the weeks preceding the murder, on the night of the murder, the defendants were unprovoked by Simpson and Ken. The evidence makes clear that the defendants planned to kill Simpson and Ken as they sat in their cars outside of a Bronx restaurant, and that the defendants were the aggressors that night. The previous violence between the groups does not lessen the defendants' culpability in murdering Simpson, and the defendants should not receive a lesser punishment because Simpson and Ken were also involved in other acts of violence towards the defendants prior to April 16, 2005. The defendants should receive a sentence commensurate with their conduct in murdering Simpson. We submit that the factors set forth in Title 18, United States Code, Section 3553(a) – specifically, the nature and circumstances of the offense and the defendants' history and characteristics, the need for the sentence imposed to provide just punishment and reflect the seriousness of the offense, and the protection of the public from further crimes of the defendants – clearly support a sentence of life imprisonment for each defendant.

Brown argues that he should receive a lenient sentence primarily based on what he describes as a limited role in the murder and a merely "fortuitous" presence on the night of the murder, as well as his deficient mental capacity which, he argues, lessens his culpability for participating in these crimes. To the contrary, the evidence at trial conclusively established Brown's ongoing role in Peterkin's marijuana organization, as well as Brown's intentional and knowing role in the murder of Keino Simpson. Among other things, Brown picked up money for the drug business, made deliveries of marijuana, and, on at least one other occasion (in March 2005, just a month before the murder) possessed a gun. With regard to the murder, Brown's own post-arrest statement makes clear that Brown was aware of the prior violence between the groups, that he participated in some of those violent incidents, and that he intentionally went with the other defendants that night to find Simpson. When he and his drug partners found Simpson and Ken, Brown fired his gun at Simpson. This evidence belies Brown's claim that the murder of Simpson was not intentional, and therefore first degree murder, pursuant to Guidelines Section 2A1.1. Because the murder of Keino Simpson was perpetrated by "willful, deliberate, malicious, and premeditated killing," the PSRs Guidelines offense level calculations are entirely accurate. See 18 U.S.C. § 1111(a).

Moreover, since Brown has been in jail, his criminal conduct has continued. In July 2007, Brown was found to have possessed a dangerous weapon – an 11-inch sharpened metal object – in prison. (Brown PSR ¶ 10). In June 2008, Brown engaged in obstruction of justice by threatening one of the Government's cooperating witnesses (Dwight Mundle) in advance of his testimony at trial. Although the Government recognizes that Brown appears to have a limited intellectual capacity, given Brown's continuing and knowing participating in a violent drug organization, and his intentional actions in murdering Simpson, we submit that Brown's limitations do not lessen his culpability for these crimes and should not mitigate his sentence in this case. Moreover, Brown's recent conduct in jail demonstrates that Brown has not

rehabilitated himself and that he continues to engage in dangerous and violent behavior.

Golding seeks sentencing leniency based on his relatively young age and his lack of prior criminal history. However, the evidence at trial established that Golding was an important member of the charged drug conspiracy during a several-year period, and that he also played an active role in Simpson's murder and other violence. In particular, the evidence showed that Golding regularly distributed marijuana to customers and collected money for the drug organization. On the night after the robbery at Peterkin's home, Golding and his partners tried to kill Simpson and Ken outside of the National Black Theatre in Harlem. Specifically, Golding fired a "small machine gun" at Simpson. Days later, Golding threatened to kill Ken (which precipitated even more violence). Finally, on the night of Simpson's murder, Golding armed himself with an AK-47 assault rifle and fired numerous shots at Simpson. It is surprising that no one besides Simpson was killed by Golding's actions and the actions of Peterkin, Palmer, and Brown on April 16, 2005. In addition, Golding, like Brown, has continued his dangerous behavior while incarcerated. In December 2005, Golding was found to have possessed dangerous weapons – two shanks – while in jail. (Golding PSR ¶ 13). Like Brown, Golding engaged in obstruction of justice by threatening Mundle before he testified at trial.[1] Accordingly, given Golding's ongoing participation in a violent drug conspiracy, his active role in the violence leading up to Simpson's murder, his use of an AK-47 to kill Simpson, and his ongoing violent behavior in jail, we submit that a sentence of life imprisonment for Golding is sufficient but not greater than necessary to comply with the purposes of sentencing as set forth in Section 3553(a).

Peterkin claims that his purported motive for the murder – an assault on his wife – and his psychiatric condition while in prison should lead to a sentence of 30 years' imprisonment. However, Peterkin's argument is belied by the evidence at trial and by his own long history of criminal conduct. The Government submits that the evidence at trial demonstrated – and the jury found – that Peterkin's motive for the murder was drug-related; specifically, the evidence showed that Peterkin and his crew killed Simpson in retaliation for the theft of 25 pounds of marijuana and $47,000 from his home. Indeed, the murder followed two weeks of violent confrontations, back-and-forth between the defendants, including Peterkin, and Simpson and Ken, in retaliation for the drug robbery. Moreover, the evidence showed that Peterkin was the leader of a longstanding and successful marijuana business. Nor were these crimes Peterkin's first brush with the criminal justice system. Instead, Peterkin has 3 prior convictions for drug trafficking and one conviction for possessing a gun, for which he served

---

[1]     The Government requested that the Probation Department include facts about Golding's threats to Mundle in Golding's PSR, and we sought a Guidelines enhancement for obstruction of justice on the basis of these threats. However, the revised PSR for Golding does not address the Government's request. The Government submits that Golding's Guidelines offense level should be increased, from level 43 to level 45, based on an enhancement for obstruction of justice, and that the Court should adjust Golding's PSR accordingly.

relatively long sentences and was then deported from the United States.  Moreover, Peterkin's history and characteristics include his threatening a prosecutor during trial.  As his attorney conceded at trial, Peterkin stated that he hopes that one of the prosecutors in this case would suffer a sexual assault.  Notwithstanding his claims that he committed a murder on account of a sexual assault, Peterkin himself apparently wishes such violence upon other women.  Though the Probation Department shockingly did not construe Peterkin's statement as a threat, and therefore find that Peterkin obstructed justice, the Court should nonetheless consider this threat as further indication of Peterkin's violent history and characteristics.  Accordingly, given Peterkin's long history of criminal conduct involving drug distribution, gun possession, and violence – including murder – and Peterkin's role as a leader of the violent marijuana organization in this case, the psychiatric conditions cited by Peterkin do not militate in favor of a non-Guidelines sentence.

Finally, based on the assumption that the Court will grant his Rule 29 motion, Palmer contends that he should receive a Guidelines sentence for the gun possession charge.  We have submitted our arguments in opposition to Palmer's Rule 29 motion, and we do not repeat them here.  Because the evidence established Palmer's participation in the murder, and because Palmer had an active role in the murder – he possessed a gun which he fired at Simpson – a sentence of life imprisonment is sufficient but not greater than necessary to comply with the purposes of sentencing for Palmer.  Should the Court grant Palmer's Rule 29 motion, we submit that the Court should impose the maximum sentence of ten years' imprisonment on the remaining charge (alien in possession of a firearm).  There was strong evidence at trial proving that Palmer acted in concert with the other defendants to shoot and kill Keino Simpson, and that he used the .40 caliber Glock handgun found in his hotel room at the time of his arrest, to do so.  As such, this is not the ordinary gun possession case.  Instead, Palmer not only possessed the gun but actively used it to help shoot and kill the victim.  Accordingly, should the Court dismiss the other counts of conviction, we intend to seek the imposition of a ten-year sentence for Palmer on his firearms count.

         For all of the foregoing reasons, as well as the evidence presented at trial and contained in the defendants' PSRs, the Government submits that the Court should impose a sentence of life imprisonment for each defendant in this case.  Thank you for your consideration of these matters.

Respectfully submitted,

MICHAEL J. GARCIA
United States Attorney

By:   /s/
       Michael Q. English
       Jessica A. Masella
       Assistant United States Attorneys
       (212) 637-2594/2288

cc: All Counsel
    (By ECF)